No. 25-70006

# In the United States Court of Appeals for the Fifth Circuit

GARY WESTCOTT, SECRETARY FOR THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY; DARREL VANNOY, WARDEN OF THE LOUISIANA STATE PENITENTIARY; JOHN DOES,
    *Defendants-Appellants*

v.

JESSIE HOFFMAN,
    *Plaintiff-Appellee*

―――――――――――――――

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 25-cv-169, Hon. Shelly D. Dick

―――――――――――――――

**EMERGENCY REPLY IN SUPPORT OF MOTION FOR STAY OR VACATUR OF THE DISTRICT COURT'S MARCH 11 PRELIMINARY INJUNCTION AND TO ENLARGE WORD LIMIT**

―――――――――――――――

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

CAITLIN HUETTEMANN
Assistant Solicitor General

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

REPLY ....................................................................................................................1

ARGUMENT ..........................................................................................................1

    I. Plaintiff Is Not Likely to Succeed on His Eighth Amendment Claim. ................................................................................1

    II. Plaintiff's Remaining Arguments Are Meritless. ....................11

CONCLUSION ....................................................................................................14

CERTIFICATE OF SERVICE ............................................................................15

CERTIFICATE OF COMPLIANCE ...................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Baze v. Rees,*
  553 U.S. 35 (2008) ................................................................................... 10

*Bucklew v. Precythe,*
  587 U.S. 119 (2019) ............................................................................ passim

*Frazier v. Hamm,*
  2025 WL 361172 (M.D. Ala. Jan. 31, 2025) ............................. 2, 3, 4, 8

*Graham v. Connor,*
  490 U.S. 386 (1989) ................................................................................... 12

*Nance v. Ward,*
  597 U.S. 159 (2022) ..................................................................................... 9

*Whitaker v. Collier,*
  862 F.3d 490 (5th Cir. 2017) ................................................................... 12

*White v. Johnson,*
  429 F.3d 572 (5th Cir. 2005) ................................................................... 13

**Rules**

Fed. R. App. P. 27(d)(2)(A) ........................................................................ 1

**REPLY**

Plaintiff's enlarged opposition confirms that an immediate stay or vacatur of the district court's injunction is warranted. *Compare* Opp.61, *with* Fed. R. App. P. 27(d)(2)(A). Indeed, the Eighth Amendment issue is straightforward because (a) Plaintiff did not come close to establishing a substantial risk of severe pain from nitrogen hypoxia (which everyone agrees is physically painless), and (b) the firing squad (which everyone agrees is physically painful) is not an adequate alternative. Moreover, Plaintiff's other merits arguments are all distractions. In short, the preliminary injunction is profoundly wrong. The Court should immediately stay or vacate it.

**ARGUMENT**

**I.　PLAINTIFF IS NOT LIKELY TO SUCCEED ON HIS EIGHTH AMENDMENT CLAIM.**

**No Substantial Risk of Severe Pain.** Among other concessions, Plaintiff now admits that, as Dr. Bickler testified, nitrogen hypoxia "causes a gentle hypoxic death" in the assisted-suicide context. Opp.32. Why not here? Because Plaintiff "is about to be executed." Opp.32. How is that different? Because Plaintiff "would hold his breath" and thereby "increas[e] his sense of terror." Opp.30. Respectfully, this is not a serious

Eighth Amendment argument. Plaintiff *testified* that he will take "deep breaths" while meditatively breathing during his execution, ROA.3155, 3161—and the district court *found* that "there is no substantial burden to his exercise of rhythmic breathing," ROA.3093. There is thus no "substantial risk of severe pain" from nitrogen hypoxia in this record. *Bucklew v. Precythe*, 587 U.S. 119, 134 (2019). That ends this case—especially given Plaintiff's extraordinary preliminary-injunction burden. And Plaintiff's attempted responses do not change this fact.

**1.** Begin with the Alabama experience. Mot.18–21. Plaintiff runs away from the district court's cited Alabama media reports, claiming that the district court "did not primarily rely on them." Opp.29. Compare the district court's own words: "Eyewitness accounts from these executions are *the most probative evidence* of what death by forced inhalation of nitrogen looks like." ROA.3099 (emphasis added).

Plaintiff also does not (and cannot) dispute that those reports are "insufficiently reliable because [the eyewitnesses] d[id] not know"—and could not know—"when the nitrogen began to flow." *Frazier v. Hamm*, 2025 WL 361172, at *11 (M.D. Ala. Jan. 31, 2025) (footnote omitted); Opp.30 n.14 (not disputing that reliability problem). Nor does he dispute

that "unconscious individuals experience involuntary movements," such as "'muscle tremors and convulsion-like activity.'" *Frazier*, 2025 WL 361172, at *12. Those reports thus are not a valid basis for inferring what the district court and Dr. Bickler tried to infer: "that inmates remained conscious after the nitrogen began flowing and were distressed and in pain." *Id.* at *11. This is not a credibility determination; it is a basic fact recognized by the Alabama courts.

Recognizing his problem, Plaintiff insists that these reports "merely corroborated Dr. Bickler's opinions." Opp.30. That is backwards: Dr. Bickler expressly *based* his opinions (and the only paper cited in his expert declaration—his two-page opinion piece, ROA.139, 211) on those reports' suggestion that the Alabama executions "were prolonged, apparently agonizing, evidently painful and traumatic." ROA.3356; *accord* ROA.3384. So, Plaintiff misrepresents the record in asserting that "[t]he media reports did not" inform Dr. Bickler's opinions as to their unfounded intimations regarding "when nitrogen began to flow and when an inmate lost consciousness." Opp.30 n.14. Dr. Bickler himself cited those reports as "strongly suggest[ing]" "conscious[] [] extreme distress." ROA.211; *accord* ROA.3356 ("apparently agonizing, evidently painful

3

and traumatic"). Again, this is not a credibility determination; it is a fact that Plaintiff's entire case (and the decision below) depends on media reports the Alabama courts have rejected as unreliable.

Speaking of the Alabama courts, Plaintiff does not seriously dispute that the district court below just relitigated the Alabama cases and came to the opposite conclusion. He protests (Opp.28–29) that (a) the Alabama prisoners selected nitrogen, while he has no choice, and (b) those challenges "were limited" to the issue of alternative methods. Those attempted distinctions are entirely irrelevant to the *Bucklew* Step Zero question whether nitrogen poses a substantial risk of severe pain, which the Alabama courts directly answered. *See, e.g.*, *Frazier*, 2025 WL 361172, at *9 ("he fails to show that the Protocol is sure or very likely to cause severe psychological pain"). Plaintiff also points out that "Dr. Bickler did not testify in any of those cases." Opp.29. But that does not change the fact that Dr. Bickler and the district court engaged in the same media-report-driven reasoning based on the same reports that the Alabama courts have rejected because that reasoning is objectively flawed. Again, this is not a credibility determination; it is fact.

**2.** Next, Plaintiff all but admits that the district court erred in building its analysis on the possibility that Plaintiff will hold his breath. Mot.21–23; Opp.31. Rightly so: Plaintiff *testified* that he will take "deep breaths" while meditatively breathing during his execution, ROA3155, 3161—and the district court *found* that "there is no substantial burden to his exercise of rhythmic breathing." ROA.3093.

Plaintiff says that his plans "can change" once he is in the execution chamber, Opp.31, but that is just rank speculation intended to walk back Plaintiff's own testimony. *Cf. Bucklew*, 587 U.S. at 144 ("The problem with all of these contentions is that they rest on speculation unsupported, if not affirmatively contradicted, by the evidence in this case."). Plaintiff also suggests that Dr. Bickler "reasonably expect[s]" him to hold his breath—but as his Bickler parenthetical on the same page illustrates, that testimony claims a "terror" response, not breath-holding. Opp.30. Indeed, that is why even the district court recognized only the *possibility* of "an unwilling inmate hold[ing] his breath." ROA.3104. In addition, Plaintiff cites Dr. Antognini, Opp.31, but omits that the cited transcript reflects Dr. Antognini's answers to Plaintiff's counsel's questions about

5

"hold[ing] your breath"—he did not testify that Plaintiff would hold his breath. ROA.3502.

Finally, even setting all this aside, Plaintiff does not say a word about the State's independent point that he cannot satisfy his irreparable-harm burden through self-inflicted harm. Mot.23. In short, Plaintiff has no answer to the fact that the district court clearly erred in inflating its decision based on assumed breath-holding.

**3.** Finally, Plaintiff cannot overcome the fact that his own Dr. Sautter and Dr. Bickler foreclosed any claim of a substantial risk of severe pain from nitrogen hypoxia.

Take first Dr. Sautter. Plaintiff now wants nothing to do with him. "[H]is testimony has no current relevance," "it is not clear ... the district court found him credible," and so on. Opp.31. For good reason: Dr. Sautter could have passed for the State's witness. *See* Mot.23–24. Conceding Dr. Sautter's testimony that Plaintiff will manage any distress if he does his Buddhist breathing techniques, Plaintiff complains that "[t]here is no testimony from Dr. Sautter that [Plaintiff] will in fact be able to practice breathing while being administered nitrogen." Opp.31. But we have a district court "*find[ing]* [that] there is no substantial burden to his

6

exercise of rhythmic breathing" "as [the nitrogen] is administered." ROA.3093 (emphasis added). Plaintiff also claims "the district court found ... [that he] is likely to hold his breath as nitrogen is administered." Opp.31. To the contrary, the court accepted his "admi[ssion] that he will have the ability to breathe." ROA.3093. Dr. Sautter's testimony alone thus requires a stay and vacatur of the injunction.

Plaintiff's efforts to rehabilitate Dr. Bickler, for his part, are thus beside the point and ultimately meritless. Like the district court, Plaintiff loudly proclaims (Opp.30, 31, 32) that Dr. Bickler is an expert in "human hypoxia." But, like the district court, Plaintiff refuses to respond to the State's explanation why that expert status alone does not carry the day for Plaintiff: Dr. Bickler's experience—and his basis for suggesting a terror response—is in holding conscious subjects at low oxygen levels for several minutes, which is manifestly not the issue here. Mot.29.

Because (a) Dr. Bickler "candidly conceded" that a person who naturally breathes pure nitrogen (as Plaintiff testified he will) "will lose consciousness in less than one minute," ROA.3102, and because (b) Dr. Bickler testified that this "causes a gentle hypoxic death" in the assisted-suicide context, Opp.32, one is left to wonder where Dr. Bickler's "terror

7

response" opinion comes from. We know where: his belief that "[t]hat's a very different context than forced asphyxiation with nitrogen in a death chamber." ROA.3420. But that is just a complaint about the emotional reality that "is inherent in any execution." *Frazier*, 2025 WL 361172, at \*12. A tailor-made "death by execution is different" excuse does not work.

To reiterate one more time: This has nothing to do with credibility; it has everything to do with Dr. Bickler's own testimony establishing that Plaintiff's execution will be swift and "gentle."

**No Sufficient Alternative.** In all events, Plaintiff's two pages devoted to the firing squad betray that he also failed to identify "a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 587 U.S. at 134.

Plaintiff now concedes that "death by firing squad causes more physical pain than by nitrogen hypoxia," Opp.36 (italicization omitted), which itself "does not produce physical pain," ROA.3102. His response? "[T]here is [] no case authority holding that the alternative must be less physically painful as a matter of law." Opp.36–37. But that is literally

8

the question in every method-of-execution case, including in *Bucklew* itself. *See* 587 U.S. at 143, 148 (asking whether nitrogen would "clear[ly] and considerabl[y]" reduce "a substantial risk of severe pain" from lethal injection). Because the undisputed evidence is that the firing squad would actually *cause* (not just increase a substantial risk of) severe pain as compared to nitrogen hypoxia, Plaintiff is nowhere close to satisfying *Bucklew*. And contrary to Plaintiff's suggestion (Opp.37), *Nance v. Ward*, 597 U.S. 159 (2022), does not help him because there the Supreme Court (and the Eleventh Circuit) addressed only whether an alternative that is not permitted by State law can be litigated under 42 U.S.C. § 1983, not whether the firing squad is a viable alternative despite its painful attributes. *See id.* at 163, 166.

Plaintiff next tries to sidestep *Bucklew* by pointing to its discussion of "'*terror*, pain, *or* disgrace'" to say that "terror" should count for something. Opp.37 (emphases Plaintiff's). But he is just running away from *Bucklew*'s question: whether nitrogen "cruelly superadds *pain*." 587 U.S. at 134; *id.* at 135 ("a risk of unnecessary *pain*" (emphasis added)). He has no response to the State's point that there is no case turning *Bucklew* upside down by faulting a State for not adopting a *more*

9

*physically painful* method of execution. Moreover, Plaintiff conspicuously ignores the State's additional point that the district court plainly and improperly gerrymandered the relevant timeline and facts for assessing supposed terror. *Compare* Mot.33–34, *with* Opp.37; *see* Alabama.Br.6–7.

Finally, Plaintiff does not dispute the potential legitimate penological reasons for choosing nitrogen hypoxia over other methods like the firing squad. He simply claims (Opp.38) that this "is all attorney argument." But the legitimate penological reasons credited by the Supreme Court commonly come from attorney argument, for the simple reason that a State will not have any reasons on record for declining to adopt an alternative it never considered. *See, e.g.*, *Bucklew*, 587 U.S. at 142 ("choosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it"); *Baze v. Rees*, 553 U.S. 35, 57–58 (2008) (plurality op.) ("interest in preserving the dignity of the procedure" and "interest in providing for a quick, certain death"). Moreover, this record establishes as fact that (a) the firing squad is physically painful, and (b) nitrogen hypoxia is physically painless.

Thus, in addition to other cited reasons, Mot.34–36, the State plainly has a legitimate penological reason for preferring nitrogen hypoxia over the firing squad. Plaintiff cannot overcome *Bucklew*.

## II. PLAINTIFF'S REMAINING ARGUMENTS ARE MERITLESS.

Space and time constraints prevent exhaustive responses to Plaintiff's other arguments, but these are key:

**RLUIPA.** This Court should ignore Plaintiff's RLUIPA argument because it lacks jurisdiction over the district court's interlocutory dismissal of that claim earlier in this litigation, which Plaintiff has not appealed and which in any event is unappealable because there is no final judgment. *See* ROA.3119–22 (appealing only March 11 order); ROA.3140 (district court dismissing RLUIPA claim on March 7). In addition, as the State's preliminary-injunction memorandum explains, that claim is meritless, not least because Plaintiff did not preserve a strict-scrutiny argument. ROA.1884–86.

**Eighth Amendment As-Applied Claim.** The Court also should ignore Plaintiff's attempt to revive his as-applied Eighth Amendment claim. The State's proposed findings below explain that Dr. Sautter

gutted this claim, which explains why the district court did not address it. ROA.2614–17.

**Access to Counsel/Courts.** The Court should similarly ignore Plaintiff's attempt to revise his access claims. The district court properly recognized that these claims are foreclosed. ROA.3111–12 (citing *Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017)). Plaintiff tries (Opp.54–55) to sidestep that precedent by invoking due process generally, even though the Sixth and Eighth Amendments more specifically bear on the issue. Supreme Court precedent forecloses that tactic. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Plaintiff also emphasizes a right to access the courts, but *Whitaker* likewise rejects that theory on materially identical facts. 862 F.3d at 501.

**Stay Factors.** The Court should also ignore Plaintiff's suggestion (Opp.21–23) that the State did not argue the stay factors because it did not copy-and-paste Section III of the emergency motion into another standalone stay section making the same arguments. The factors are virtually identical and the State of course argued them.

**Exhaustion.** Finally, although the Court need not address exhaustion because Plaintiff is not likely to succeed on the merits of his

12

Eighth Amendment claim, it bears noting that the chink in Plaintiff's armor is *White v. Johnson*, 429 F.3d 572 (5th Cir. 2005). He admits that the exhausted "challenge to the [lethal injection] protocol in whole" in *White* failed to preserve a challenge to a cut-down procedure to administer the lethal injection. Opp.44. In other words, this Court required a grievance challenging the cut-down procedure specifically. *A fortiori* Plaintiff's decision to not reveal why he thinks nitrogen is unconstitutional (*i.e.*, because the firing squad is a viable alternative) until this litigation is fatal.

Contrary to his "unavailability" and "futility" claims, moreover, had Plaintiff aired his claim to the State beforehand, the State could have (a) compared nitrogen to the firing squad and (b) if necessary, amended its protocol to accommodate Plaintiff's concerns. *See* ROA.2597 (State's proposed findings explaining that it could have considered the use of a sedative, as proposed by his counsel, that would have mooted this case). He cannot hide behind last year's grievances and last month's grievances which simply challenged all Louisiana methods of execution generally without ever attempting to specify an Eighth Amendment claim. Mot.12.

## CONCLUSION

The Court should immediately stay, and vacate, the March 11 Order enjoining Plaintiff's March 18 execution.

Respectfully submitted,

Dated:   March 14, 2025

ELIZABETH B. MURRILL
Attorney General of Louisiana

*J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

MORGAN BRUNGARD
Deputy Solicitor General

CAITLIN HUETTEMANN
Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I certify that on March 14, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,510 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:   March 14, 2025