# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 14, 2025
Lyle W. Cayce
Clerk

No. 25-70006

Jessie Hoffman,

    *Plaintiff—Appellee/Cross-Appellant*,

*versus*

Gary Westcott, *Secretary, Louisiana Department of Public Safety and Corrections*; Darrel Vannoy, *Warden, Louisiana State Penitentiary, In His Official Capacity*; John Does, unknown executioners,

    *Defendants—Appellants/Cross-Appellees*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:25-CV-169
_____

Before Haynes, Ho, and Oldham, *Circuit Judges*.

James C. Ho, *Circuit Judge*:

    Jessie Hoffman is scheduled to be executed by nitrogen hypoxia on March 18, 2025. The district court has now entered a preliminary injunction preventing Louisiana state officials from carrying out his execution on the ground that death by nitrogen hypoxia violates the Eighth Amendment.

    The preliminary injunction is not just wrong. It gets the Constitution backwards, because it's premised on the odd notion that the Eighth Amendment somehow requires Louisiana to use an admittedly *more* painful

method of execution—namely, execution by firing squad rather than by nitrogen hypoxia. That can't be right. Indeed, it contravenes Supreme Court precedent. We accordingly vacate the preliminary injunction.

## I.

Hoffman was convicted of first-degree murder for the kidnapping, rape, and murder of Mary "Molly" Elliot, and sentenced to death in 1998. *See State v. Hoffman*, 768 So. 2d 542, 549–50 (La. 2000). He appealed his conviction to finality, *Hoffman v. Louisiana*, 531 U.S. 946 (2000), and exhausted all of his state and federal post-conviction remedies. *See State v. Hoffman*, 2020-00137 (La. 10/19/21), 326 So. 3d 232, 235–36, 242 (collecting post-conviction cases). But Hoffman evaded execution because drug companies refused to provide Louisiana with the necessary drugs to administer lethal injection—the State's only method of execution at the time.

This changed in 2024, when Louisiana added nitrogen hypoxia as a method of execution, modeling it after Alabama's system. La. R.S. 15:569. The system delivers pure nitrogen gas to a full-face silicon mask with a plexi-glass screen known as a "source respirator"—industrial grade and superior to ordinary medical grade masks. Thick, cushion material presses against the face and creates a "virtually air tight seal." The mask has a one-way inlet valve allowing for airflow into the mask from the industrial tube that delivers both ambient air and nitrogen. The mask also allows for exhaling through another one-way exhaust valve.

Breathing 100% pure nitrogen causes unconsciousness in less than a minute, with death following rapidly within ten to fifteen minutes. And it does not produce physical pain.

Nitrogen hypoxia has been used successfully four times by the State of Alabama. It is Louisiana's only currently available method of execution.

No. 25-70006

After Louisiana adopted its new nitrogen hypoxia protocol, Hoffman attempted to revive a prior moot case challenging Louisiana's lethal injection protocol via a Rule 60(b) motion to challenge the nitrogen hypoxia protocol. The district court sat on this motion until Hoffman received his death warrant in early February of this year. It then granted the motion (on procedurally dubious grounds). *Hoffman v. Jindal*, No. 12-796-SDD-EWD, 2025 WL 582492 (M.D. La. Feb. 21, 2025).

Hoffman filed this suit on February 25 and sought injunctive relief. After two weeks of expedited discovery, motion practice, and an evidentiary hearing on March 7, the district court granted Hoffman's motion for a preliminary injunction. *Hoffman v. Westcott*, No. 25-169-SDD-SDJ, 2025 WL 763945 (M.D. La. Mar. 11, 2025).

First, the district court concluded that Hoffman had exhausted his administrative remedies under the PLRA. *Id*. at *4–5. Second, the district court held that Louisiana's nitrogen hypoxia protocol likely violated the Eighth Amendment. *Id*. at *12. In doing so, the district court found that nitrogen hypoxia had a substantial risk of superadding pain and suffering. *Id*. at *10. It also held that death by firing squad was a reasonable alternative that would reduce the significant risk of severe pain. *Id.* at *11.

Defendants immediately filed this appeal. "Although the ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, a decision grounded in erroneous legal principles is reviewed de novo." *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## II.

The State of Louisiana argues that the district court erred in holding, first, that Hoffman had exhausted his administrative remedies, and second, that death by nitrogen hypoxia likely violates the Eighth Amendment. We take each in turn.

No. 25-70006

**A.**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under Louisiana law, a prisoner must "submit[] a request to the warden briefly setting out the basis for the claim and the relief sought." *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) (citation omitted).

The State argues that Hoffman did not attempt to raise his complaint in the grievance process. But Hoffman filed a grievance under the prison's Administrative Remedy Procedure twice—in June after Louisiana adopted the nitrogen hypoxia protocol and after he had notice that the State was seeking an execution warrant. So it can hardly be concluded that Hoffman did not attempt to raise his complaint in the grievance process.

The State next argues that Hoffman failed to plead an alternative basis for his execution in his emergency Administrative Remedy Procedure.

But the PLRA does not require the prisoner to provide exacting detail or specific legal theories. "As a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).

Hoffman put the State on notice that he was challenging the method of his execution. That is enough given the context. So the district court did not abuse its discretion.

**B.**

We review a grant of a preliminary injunction for abuse of discretion, applying the same test that the district court did. *See Winter v. NRDC*, 555

4

U.S. 7, 20–21 (2008). "That familiar standard requires a plaintiff to make a clear showing that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quotations omitted). That said, "the absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law," such that "we need not address the three remaining prongs of the test for granting preliminary injunctions." *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003).

"[T]he Eighth Amendment does not guarantee a prisoner a painless death." *Bucklew v. Precythe*, 587 U.S. 119, 132 (2019). As the Supreme Court has held, the Eighth Amendment only bars those methods of execution that "intensif[y] the sentence of death with a (cruel) superaddition of terror, pain, or disgrace." *Id.* at 133 (cleaned up). "[T]he Constitution affords a measure of deference to a State's choice of execution procedures and does not authorize courts to serve as boards of inquiry charged with determining 'best practices' for executions." *Id.* at 134 (citation omitted).

For a method of execution to be held unconstitutional under the Eighth Amendment, a prisoner must meet two requirements. First, the prisoner must prove that the method of execution "presents a risk that is '*sure or very likely* to cause serious illness and needless suffering.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citation omitted). Second, the prisoner "must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 587 U.S. at 134. Failure on either requirement dooms the prisoner's challenge. *See id.*

No. 25-70006

As the district court noted, Hoffman "seeks to be executed by firing squad . . . instead of nitrogen hypoxia." 2025 WL 763945, at *1. (Hoffman also proposed execution by a drug cocktail known as DDMAPh, but the district court correctly rejected that proposed alternative.)

Hoffman's argument fails on multiple levels. To begin with, the district court heard expert testimony from both parties that nitrogen hypoxia is painless. Hoffman's expert explicitly stated that nitrogen hypoxia "does not cause physical pain." *Id.* at *8. Moreover, experts for both parties agreed that death by firing squad can cause pain—and would therefore necessarily be *more* painful than execution by nitrogen hypoxia.

So Hoffman cannot possibly prevail under the legal standards set forth by the Supreme Court in *Glossip* and *Bucklew*—and that inferior courts like ours are duty-bound to follow.

What's more, this conclusion is further reinforced by the fact that the Supreme Court has previously "upheld a sentence of death by firing squad." *Glossip*, 576 U.S. at 869 (citing *Wilkerson v. Utah*, 99 U.S. 130, 134–135 (1879)). *See also Bucklew*, 587 U.S. at 134 (reaffirming that execution by firing squad is a "traditionally accepted method[] of execution"). So Hoffman has the impossible task of challenging a method of execution that he admits is less painful than other established methods of execution that the Supreme Court has already blessed.

The district court justifies its contrary holding by focusing on psychological terror. But as already discussed above, the Constitution only forbids the "superaddition" of terror that is greater than an alternative method of execution. *Bucklew*, 587 U.S. at 133. Hoffman presented no such evidence of superadded terror to the court—let alone evidence of how execution by a firing squad would substantially mitigate that terror. So the district court's theory would render capital punishment itself

6

unconstitutional—because surely *every* method of execution necessarily involves some measure of psychological terror.

In sum, the district court didn't just get the legal analysis wrong—it turned the Constitution on its head, by relying on an indisputably more painful method of execution as its proposed alternative. Reasonable minds can differ on the proper understanding of the Eighth Amendment in certain cases, but surely we can all agree that it does not require State officials to favor more painful methods of execution over less painful ones.

* * *

Federal courts play an important but limited role in our constitutional democracy. The job of a federal district court is to apply the law to the facts presented by the parties—and to leave contested political questions to the political process. When district courts overstep their bounds and exercise powers that properly belong in another branch of government, it is incumbent on federal appellate courts to right the ship and ensure that the judiciary does not exceed its authority under Article III of the Constitution. We accordingly vacate the preliminary injunction.

No. 25-70006

HAYNES, *Circuit Judge*, dissenting:

I think the district court properly exercised its discretion in granting a preliminary injunction given the limited amount of time Hoffman had to challenge his execution by nitrogen hypoxia, which is new in Louisiana. The district court fully explains all the efforts made: Hoffman tried throughout and did not wait until the last minute. Instead, the state did not let him challenge earlier. The timeline in which he could challenge it and the setting of his execution date, which is March 18, all happened within the last month. As the district judge thoroughly discusses, there are issues that need more time to be resolved and decided. Obviously, that cannot be done once he is dead. While I am not suggesting a long time, I do think granting a preliminary injunction to allow some additional time to further review and address the method of execution (in addition to the other reasons given by the district court) is not an abuse of discretion by the district court.

Although the majority opinion concludes that the district court abused its discretion through legal error, that conclusion overlooks some of the district court's factual findings, which we must accept unless clearly erroneous. For example, the majority opinion states that breathing pure nitrogen causes unconsciousness in less than a minute. But it fails to address the district court's finding that "[o]n the low end, conscious terror and a sense of suffocation endures for 35 to 40 second," while "[o]n the high end, conscious psychological suffering endures for 3 to 5 minutes if an unwilling inmate holds his breath." If Hoffman were to be executed by a firing squad, which is his requested and preferred method, the district court found that he would be rendered unconscious in three to four seconds. That is a significant difference that is crucial to the Eighth Amendment analysis. Unfortunately, the majority opinion does not adequately address the facts as properly found by the district court, which, in my opinion, did not abuse its discretion. Accordingly, I respectfully dissent from the majority opinion.

8